IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

DOROTHY WENZEL on behalf of
herself and all others similarly situated,

    *Plaintiff,*

v.                                       Civil Case No. 3:14cv432

GLADE M. KNIGHT, et al.,

    *Defendants.*

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' *Motion to Transfer* under 28 U.S.C. § 1404(a). (Dk. No. 15.) The defendants, two corporations and the individuals who managed and directed those corporations, ask the Court to transfer this action to the Eastern District of New York. Because the plaintiff's choice of forum, party convenience, and the interest of justice favors Virginia, the Court DENIES the motion.

### I. Background[1]

Dorothy Wenzel brings this putative class action on behalf of herself and all shareholders of two Richmond-based real estate investment trusts, Apple REIT Seven, Inc. ("A7"), and Apple

---

[1] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) provides 'discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The defendant bears the burden of proving that § 1404(a) counsels strongly in favor of transfer. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946) ("But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

REIT Eight, Inc. ("A8").[2]  Wenzel, an A7 shareholder, alleges that the defendants offered shares in A7 and A8's Dividend Reinvestment Plans ("DRIPs") at the inflated price of $11 each despite knowing that the shares were worth significantly less.  Ultimately, shareholders purchased $124 million and $99 million worth of shares in the DRIPs of A7 and A8, respectively.

Wenzel, a resident of New York, filed this diversity action on June 16, 2014.  The defendants filed the instant motion to transfer venue on July 18, 2014.  In their motion, they argue that the first-to-file rule requires this Court to transfer the action to the Eastern District of New York, where a similar class action was filed on April 22, 2014.  *See Moses v. Apple Hospitality REIT Inc., et al.*, Case No. 1:14-cv-3131-DLI-SMG (E.D.N.Y. filed Apr. 22, 2014).

## II. Discussion

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In deciding whether to transfer venue, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

### A. Proper Venue

Under the first inquiry, the Court determines whether the plaintiff could have brought the action in the transferee forum.  The general venue provisions in 28 U.S.C. § 1391 allow a plaintiff to sue in either the district where one defendant resides if all defendants reside in the

---

[2] A7 and A8 have since merged with Apple REIT Nine, Inc., to become Apple Hospitality REIT, Inc.

same state[3] or the district where "a substantial part of the events or omissions giving rise to the claim" took place. 28 U.S.C. § 1391(b)(1)-(2).[4]

Wenzel does not contest that she could have filed this action in the Eastern District of New York. She lives in Queens, New York, and purchased her shares of A7 through David Lerner Associates, a brokerage firm headquartered in Syosset, New York. Presumably most of the decisions regarding share pricing and operation of the DRIP occurred in Richmond, Virginia, where A7, A8, and their management entities have their headquarters. But § 1391(b)(2) does not require venue "in the district where the *most substantial* portion of the events occurred, nor does it require a [party] to establish that every event that supports an element of a claim occurred in the district where venue is sought." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006). "Venue may be proper even if a greater part of the events giving rise to a claim happened in another forum." *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005). Because Wenzel purchased her shares of A7 from a broker in the Eastern District of New York, the Court finds that she could have properly filed this action in that forum.

## B. Balancing Factors

Under the second inquiry, the Court considers a balance of four factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994-95 (E.D.

---

[3] The Court need not analyze the defendants' residences because at least Glade Knight resides in Virginia. *See* Civil Cover Sheet, Dk. 1, Ex. 1 (indicating Knight's residence as Henrico County, Virginia). For venue to be proper in the Eastern District of New York by way of the defendants' residences, all defendants would have to reside in New York. *See* U.S.C. § 1391(b)(1).

[4] The fallback venue provision that examines where a defendant is subject to personal jurisdiction does not apply here because the "substantial part" provision creates proper venue in the Eastern District of Virginia. The fallback provision comes into play only when neither (b)(1) nor (b)(2) points to a district. *See* 28 U.S.C. § 1391(b)(3).

Va. 2011) (quoting *Heinz Kettler GMBH & Co. v. Razor USA, LLC,* 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).

### 1. Plaintiff's Choice of Forum

The first factor weighs in favor of Virginia. "[T]he plaintiff's choice of forum is ordinarily entitled to substantial weight," but can be disregarded "when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum." *Koh,* 250 F. Supp. 2d at 632. For the defendants to convince the Court to disregard Wenzel's initial choice of forum, they must meet "the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought." *Id.* (quoting *Medicenters of Am., Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974)).

Although not Wenzel's home forum, Virginia bears an undeniably strong relation to the claims she brings. The corporations named as defendants are headquartered in and principally operate out of Virginia. Wenzel claims, and the defendants do not dispute, that most, if not all, of the individual defendants reside in Virginia. Presumably the defendants made the pricing decisions that gave rise to Wenzel's claims in Virginia. The defendants point out that sending the case to Wenzel's home forum in New York would be more convenient for her. That may be true, but the Court hesitates to second-guess Wenzel's decision to file the case away from her home when Virginia so clearly relates to the causes of action she brings.

### 2. Convenience of the Parties

The second factor weighs in favor of Virginia. "The party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co., Ltd. v. Rambus,*

*Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005).[5] Each of these factors points to the Eastern District of Virginia, the forum closest to the defendants and their base of operations. The defendants point out only one potential witness outside this Court's subpoena power, David Lerner Associates. Otherwise, the bulk of the evidence and majority of witnesses would likely come from Virginia. The costs associated with accessing and producing discovery and obtaining witnesses would be significantly lower in Virginia compared to New York. The defendants seem to insinuate that New York would be more convenient for Wenzel, but "[t]ransfer is not appropriate merely to shift the hardships" from one side to the other. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998). This remains true even if the moving party offers to sacrifice its own convenience in order to reach its desired forum.

### 3. Convenience of Witnesses

The third factor weighs neither in favor of New York nor Virginia. Regarding the convenience of witnesses, the party seeking transfer has "the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636. Rather than specify witnesses and the materiality of their testimony, the defendants make a fleeting reference to David Lerner Associates and a non-specific assertion that "many non-party witnesses are located" in the Eastern District of New York. Defs.' Brief 8; Defs.' Reply Brief 6. Without specificity as to why DLA's testimony shines light on Wenzel's claims or who the non-party witnesses are, the defendants' statements do not provide the Court with enough information to determine whether New York might be more convenient for potential

---

[5] The defendants devote most of their party-convenience argument to a discussion of litigation already in the Eastern District of New York over the same issue as this case, but that argument is best analyzed under the interest of justice factor. Party convenience relates to the plaintiff and defendants' ability to put on their cases in a given forum.

non-party witnesses. At the same time, Wenzel has not identified any non-party witnesses to her claims that reside in Virginia.[6] At this early stage in the litigation, it may not be possible to identify non-party witnesses and the materiality of their testimony. *See Affinity Memory*, 20 F. Supp. 2d at 955 n.13 (noting the tension in filing transfer motions before the parties make their initial disclosures for discovery). Accordingly, the Court cannot determine whether witness convenience favors New York or Virginia.

### 4. Interest of Justice

The fourth factor weighs in favor of Virginia. "The interest of justice encompasses public interest factors aimed as 'systemic integrity and fairness.'" *Samsung*, 386 F. Supp. At 721 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). In some cases, the interest of justice trumps the other factors, even when they suggest a different outcome. *See Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). The Court's considerations regarding the interest of justice include "the pendency of a related action, the court's familiarity with applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Pragmatus*, 769 F. Supp. 2d at 996 (citation omitted). Only the first three considerations bear upon the defendants' motion to transfer the case to New York.

### a. Pendency of Related Actions

The pendency of a related action in the Eastern District of New York counsels in favor of transfer. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to a wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19,

---

[6] The Court notes, however, that the burden remains on the defendants to show that convenience favors New York, not on Wenzel to show that convenience favors Virginia.

26 (1960). When comparing two related actions filed in different federal courts, the court considering transfer should keep in mind "judicial economy, forum shopping, and the prospect of inconsistent outcomes." *Samsung*, 386 F. Supp. 2d at 721. "The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005). The defendants point to the pendency of another putative class action filed by a disgruntled A8 shareholder in the Eastern District of New York, *Moses v. Apple Hospitality REIT, Inc.*, Case No. 1:14-cv-3131-DLI-SMG (E.D.N.Y. filed Apr. 22, 2014).

In this context, judicial economy cut both ways. The potential to consolidate Wenzel's action with *Moses* counsels in favor of transfer, but this Court's familiarity with the facts, claims, and underlying law suggests that the overarching dispute might be more efficiently resolved in Virginia. Moreover, although not identical to Wenzel's claims, the Court currently has before it another Apple REIT shareholder dispute, *DCG&T v. Knight*, Case No. 3:14-cv-67-JAG (E.D. Va. filed Jan. 31, 2014). The *DCG&T* case is brought against the same universe of entities and defendants and alleges claims arising from the same universe of events. The underlying key players and legal doctrines are the same as those from Wenzel's action. *Cf. Samsung*, 386 F. Supp. 2d at 386 ("Judicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case."). The Court's familiarity with the operation not only of real estate investment trusts but also the state law that governs them creates an efficiency gain that will be lost if Wenzel's claim goes to New York. Moreover, regardless of the transfer, the Court will still have to resolve the *DCG&T* action. In sum, consolidation of the DRIP claims might favor New York, but judicial efficiency favors Virginia.

Forum shopping does not affect the Court's analysis. Wenzel suggests the defendants want to find their way into a more favorable court, but the existence of the *Moses* case in the Eastern District of New York makes clear that the defendants base their motion on the legitimate interests of justice.[7]

The potential for inconsistent results weighs in favor of transfer to New York. The defendants filed motions to dismiss the respective complaints in *Moses* and this case, and both motions await disposition. Moreover, to the extent Wenzel states class claims that overlap or relate to the class claims brought in *Moses*, transfer to New York for consolidation could mitigate "any risk of inconsistent rulings on class action issues, such as composition of classes and sub-classes." *Byerson*, 467 F. Supp. 2d at 636. Because the potential for inconsistent results exists as long as *Moses* continues in the Eastern District of New York, the pendency of *Moses* favors transfer to that district.

### b. The Court's Familiarity with Applicable Law

This Court's familiarity with Virginia law weighs in favor of denying the motion to transfer. The parties agree that Virginia law applies to Wenzel's claims. Generally, "it is preferable to have cases decided by courts familiar with the substantive law to be applied." *Gen. Foam Plastics Corp. v. Kraemer Export Corp.*, 806 F. Supp. 88, 90 (E.D. Va. 1992). This Court is thoroughly familiar with Virginia corporate and fiduciary law. Although familiarity with state

---

[7] The Court notes, however, that the defendants could just as easily have asked the New York court to transfer *Moses* to this Court. The defendants counter that suggestion by arguing that New York follows the first-to-file rule, so the first-filed action should stay put. Defs.' Reply Brief 4. But courts do not apply the first-to-file rule rigidly, especially when the balance of conveniences favors a second-filed action. Considering the relative docket conditions and the obvious convenience of Virginia as a forum for the defendants, Wenzel's suggestion that the defendants ask for transfer in order to undermine her claims is not as outlandish as the defendants make it out to be.

law is not determinative in and of itself, the factor counsels strongly in favor of the Eastern District of Virginia.

### c. Docket Conditions

Similarly, the comparative docket conditions of the Eastern District of Virginia and Eastern District of New York weigh in favor of denying the motion. Relative docket conditions usually "are not given great force," but they can be persuasive if they point in the same direction as the other factors considered under § 1404(a). *Samsung*, 386 F. Supp. 2d at 723. Wenzel submits data that shows dockets in the Eastern District of New York are roughly three times longer than dockets in the Eastern District of Virginia and cases reach trial in the Eastern District of Virginia almost three times faster than those in the Eastern District of New York. Pl.'s Opp'n Brief 20.[8] Although not dispositive, the relative docket conditions of the Eastern District of Virginia and the Eastern District of New York do not favor transfer to New York.

### d. The First-to-File Rule

"[W]hen multiple suits are filed in different [f]ederal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently followed." *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (1982); *see also Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 300 (4th Cir. 2001) (recognizing the first-to-file rule). Deferring to the first-filed action promotes judicial efficiency, avoids duplicative litigation, and ensures consistency in judgments. *George Mason Univ. Found., Inc. v. Morris*, 2013 WL 64491009, at *4 (E.D. Va. Dec. 9, 2013). Whether the

---

[8] The most recent data available shows that among the ninety-four district courts in the United States, the Eastern District of Virginia ranks first in terms of the speed with which civil matters move from filing to trial. The Eastern District of New York ranks fifty-seventh. *See Federal Court Management Statistics: District Courts – June 2014*, U. S. Courts Administrative Office, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx (last visited Dec. 10, 2014).

first-to-file rule applies depends on a comparison of the actions' chronology, parties, and issues. *See id.* If two cases involve substantially the same parties and issues, then the rule suggests that a court reviewing the later-filed action dismiss or transfer it in favor of the first-filed action. The rule is not rigid, however, and courts have recognized an exception "when the balance of convenience favors the second action." *Learning Network*, 11 F. App'x at 302. The balance of convenience discussed in those cases mirror the convenience factors from the § 1404(a) analysis. *See Affinity Memory*, 20 F. Supp. 2d at 954.

According to the defendants, the interest of justice requires the transfer of this action to the Eastern District of New York because *Moses* preceded it. Wenzel does not dispute the similarity between *Moses* and her action, but counters by pointing to *DCG&T*, the other Apple REIT shareholder action currently pending before this Court and filed three months before *Moses*. *See DCG&T v. Knight*, Case No. 3:14-cv-67-JAG (E.D. Va. filed Jan. 31, 2014). Both parties agree that *Moses* raises substantially the same legal claims against the same group of defendants and that *Moses* was filed first,[9] and the Court agrees that the first-to-file analysis applies to *Moses*.

The *DCG&T* action, though brought against the same defendants, does not raise the same legal claims as Wenzel's action. Wenzel's claims arise from the pricing of A7 and A8 shares for the purposes of the DRIPs. The *DCG&T* claims arise from the conflicts of interest and flawed approval process leading up to the merger of A7, A8, and A9. There are some efficiency gains

---

[9] Wenzel filed this action on June 16, 2014. *See* Dk. No. 1, Compl. The plaintiff in *Moses* filed her action in New York Supreme Court on April 22, 2014. The *Moses* defendants then removed the action to the Eastern District of New York on May 19, 2014. The *Moses* plaintiff's amended complaint, filed June 27, 2014, relates back to the date of the original April 22 complaint. *See* Fed. R. Civ. P. 15(c). "When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used." *Affinity Memory*, 20 F. Supp. 2d at 954 n.10 (citing *800-Flowers v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994)).

10

to be had by keeping *DCG&T* and Wenzel's action in the same court, but the first-to-file rule does not dictate that *DCG&T* takes priority over *Moses*.

A strong relationship exists between the *DCG&T* claims and Wenzel's claims, however, because both require the determination of the value of A7 and A8. The *DCG&T* plaintiffs claim that the Apple directors overvalued A7 and A8 when devising the share exchange ratios for the merger. The resolution of Wenzel's claims likewise requires the determination of A7 and A8's true value. Accordingly, although the first-to-file rule does not persuade the Court to deny transfer in favor of consolidating Wenzel's claims with the *DCG&T* case, the overlap between the parties and factual issues plays into the efficient resolution of both cases.

The first-to-file rule provides useful shorthand for how courts should treat cases that mirror others filed previously in a different federal court, but the rule is not a bright line, and this Court has previously declined to transfer a second-filed case when convenience favored retaining jurisdiction. *See, e.g., Samsung*, 386 F. Supp. 2d at 723. Here, the balance of conveniences and "the goal of judicial economy call[s] for an exception to the first-to-file rule in this case." *Id.* at 725. The Court notes that the Eastern District of New York has yet to take any action on the first-filed *Moses* case. "[C]ourts have declined to defer to the first-filed action when little if anything has been done to advance that action to trial." *Affinity Memory*, 20 F. Supp. 2d at 954. Moreover, the plaintiff's choice of forum and the convenience of the parties favors Virginia. Most significantly, regardless of whether the Court transfers this action to New York, it must still face the related *DCG&T* case, which involves similar factual determinations and underlying law.[10] The time and energy spent by this Court in advancing both this case  and *DCG&T*

---

[10] Not only do the clams and facts overlap, but so do the lawyers. Both *DCG&T* and this case have nearly identical counsel on both sides.

11

toward trial, presumably at a faster pace than the Eastern District of New York has advanced *Moses*, lead the Court to conclude that the first-to-file rule does not require transfer to New York. Although the risk of inconsistent judgments remains, the Court will allow the defendants to renew their motion to transfer if the *Moses* matter accelerates.

Ultimately, the interest of justice favors Virginia.

### III. Conclusion

After considering the plaintiff's choice of forum, balancing convenience of parties and witnesses, and weighing the interest of justice, the Court concludes that transfer to the Eastern District of New York is unwarranted at this time. The first-to-file rule does not rigidly dictate the outcome of this matter, nor does it forbid the defendants from seeking transfer of the *Moses* action to this Court. For the reasons discussed above, the Court DENIES the defendants' motion to transfer venue to the Eastern District of New York.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date:  January 14, 2015
       Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge